# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| CERAMO COMPANY, INCORPORATED, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case number 1:05cv0098 TCM ) |
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This diversity action is before the Court[1] on the motion of defendant, Hartford Fire Insurance Company ("Hartford"), for partial summary judgment on the second of the two counts in the amended complaint[2] filed by plaintiff, Ceramo Company, Incorporated ("Ceramo"). [Doc. 32] Ceramo alleges that Hartford failed to properly and timely compensate it under a business interruption provision in an insurance policy and seeks monetary damages for breach of contract (Count I) and vexatious refusal to pay (Count II).

Also pending is a motion by Hartford to strike portions of an affidavit submitted by Ceramo on the grounds that those portions contradict deposition testimony by the affiant, Vernon Kasten, Jr. [Doc. 39]

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]The initial lawsuit was filed in the Circuit Court of Cape Girardeau County for the State of Missouri and is entitled a "petition." For simplicity and consistency with the Federal Rules of Civil Procedure, see Fed.R.Civ.P. 3, the Court will refer to the pleading as a "complaint."

## Background

Ceramo is in the business of manufacturing and distributing red clay flowerpots and of purchasing and distributing pottery and garden products. (Kasten Dep. at 10-11, 17.) Ceramo insured its business and physical plant with Hartford. The insurance policy in question included coverage for Ceramo's buildings with limits of $4,521,165; business and personal property coverage with limits of $2,577,000; and business interruption coverage with limits of $2,000,000. (Pl. Ex. 7; Def. Ex. D1-6.) At issue in the pending motion is only the latter coverage.

A tornado struck Ceramo's Jackson, Missouri, facility on May 6, 2003, causing extensive damage to Ceramo's main plant, office, and warehouse buildings. (Stip. ¶¶ 3, 4.)[3] The next day, Ceramo notified Hartford of its loss. (Id. ¶¶ 5, 6, 7.) Greg DeBoer, the adjuster assigned to Ceramo by Hartford, arrived on Ceramo's site on May 8. (Id. ¶ 8.) That same day, DeBoer met with a construction contractor, Bowden Contracting Company. (Id. ¶ 9.) A work crew from that company worked through the night on May 8 to erect temporary protective measures at the plant. (Id. ¶ 10.) The next morning, on May 9, Garvin and Fram, Inc., a salvage and inventory firm retained by Hartford, was at the plant. (Id. ¶ 12.)

On June 4, Hartford made an advance payment of $500,000 to Ceramo for building damage. (Id. ¶ 16.) "An advance payment is an insurer's good faith pre-payment of a claim or a portion of a claim which has not yet been fully adjusted; an advance payment however is not required by the policy and is an attempt to accommodate an insured." (Id. ¶ 17.) On

---

[3]"Stip." refers to factual allegations in Hartford's Statement of Uncontroverted Facts which are admitted by Ceramo.

June 23, Hartford made an additional advance payment of $462,413 to Ceramo for building damage. (Id. ¶ 18.) On November 21, a third payment, in the amount of $463,469, was made for building damage. (Id. ¶ 23.) The repairs had then been made. (Id.) The November 21 payment brought the total payments by Hartford to Ceramo for building loss to $1,425,876. (Id. ¶ 24.)

To assist with the analysis of Ceramo's business interruption claims, Hartford retained the accounting firm of Matson, Driscoll & Damico ("Matson"). (Brown Dep. at 11-12.) Gregory Brown worked for Matson and, after meeting with DeBoer and representatives of Ceramo in early May, provided DeBoer with an estimate of the value of Ceramo's business interruption claim – $85,995 a week. (Id. at 24-25; Pl. Ex. 3.) On June 3, DeBoer e-mailed his supervisor, Norman Williams, that Ceramo's lost income from 14 weeks of "downtime" "would appear to be in the $1.2M range." (Pl. Ex. 9; DeBoer Dep. at 82-83.) The next month, on August 5, Brown, on behalf of Matson, wrote DeBoer that his current estimate of Ceramo's business interruption loss was $639,000. (Pl. Ex. 10, Sch. A; DeBoer Dep. at 89-90.) Two days later, DeBoer requested authority from Hartford to make an advance payment of $500,000 to Ceramo for its business interruption claim; no payment was made at that time. (DeBoer Dep. at 90-92.) On October 3, Brown revised his estimate of Ceramo's business interruption loss to be $646,530. (Pl. Ex. 11, Sch. 1.) Five days later, DeBoer again requested authority to advance Ceramo $500,000 for its business interruption claim; that request was approved by Hartford the next day, on October 9. (Pl. Ex. 4; DeBoer Dep. at 92.)

On October 26, Ceramo filed a complaint with the Missouri Department of Insurance in an attempt to resolve the business interruption claim. (Kasten Dep. at 124-26.) Subsequently, Ceramo received an additional advance payment of $450,000 from Hartford for its business interruption claim. (Id.) As of late October the following year, 2004, Hartford had made payments on Ceramo's business interruption claim in the approximate amount of 1.1 million dollars. (Id. at 126.) To date, Hartford has paid Ceramo a total of $1,544,866 on its business interruption claim. (Stip. ¶ 27.)

The parties disagree about the appropriate methodology to be employed to measure Ceramo's business interruption loss. (Id. ¶ 29.) In August 2004, Ceramo's certified public accountant ("CPA") provided sales information to Matson explaining why Matson should use a twelve-month rather than a ten-month sales trend. (Schermann Dep. at 33-34.) This difference of opinion on which sales trend period should be used gave rise to the methodology dispute. (Stip. ¶ 30.) Although Ceramo disagrees with Hartford's use of a ten-month period, Ceramo agrees that even under its own calculation it assumed its business was trending downward at the time of the loss. (Id. ¶ 31.)

The parties' methodology dispute is the subject of Ceramo's breach of contract claim in Count I. Hartford argues in its motion for summary judgment on Count II that the dispute cannot also establish a vexatious refusal claim.

**Discussion**

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986); **Palesch v. Missouri Comm'n on Human Rights**, 233 F.3d 560, 565-66 (8th Cir. 2000). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party. See **Ghane v. West**, 148 F.3d 979, 981 (8th Cir. 1998); **Kopp v. Samaritan Health Sys., Inc.**, 13 F.3d 264, 269 (8th Cir. 1993).

Additionally, where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate. See **Adams v. Boy Scouts of America - Chickasaw Council**, 271 F.3d 769, 775 (8th Cir. 2001); **Gordon v. City of Kansas City, Mo.**, 241 F.3d 997, 1002 (8th Cir. 2001).

In the instant case, the unresolved issues are primarily legal.

"[T]he purpose of a business interruption policy is to indemnify the insured 'for loss caused by the interruption of a going business consequent upon the destruction of the building, plant, or parts thereof.'" **Polytech, Inc. v. Affiliated FM Ins. Co.**, 21 F.3d 271, 274 (8th Cir. 1994) (quoting Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am., 835 F.2d 812, 814 (11th Cir. 1988)) (alteration in original). Thus, an insurance company may "be liable for business interruption coverage for the duration of the reasonable period of time needed for [the insured] to reenter business plus any delay attributable to [the insurance company's] failure to perform its duties under the policy . . ." **Hampton Foods, Inc. v. Aetna Cas. and Surety Co.**, 843 F.2d 1140, 1143 (8th Cir. 1988) (citing Omaha Paper Stock Co. v. Harbor Ins. Co., 596 F.2d 283, 290 (8th Cir. 1979)) (alterations added).

An insurance company may also be liable in an action to recover a loss under certain policies "if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse . . ." Mo.Rev.Stat. § 375.420. "[T]he issue of reasonable cause for delay is determined on a case-by-case basis on the individual facts available to the insurer at the time it was called upon to pay." **Wunsch v. Sun Life Assurance Co. of Canada**, 92 S.W.3d 146, 153 (Mo. Ct. App. 2002) (alteration added). "Direct and specific evidence to show vexatious refusal is not required, the jury may find vexatious delay upon

a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case." **DeWitt v. American Family Mut. Ins. Co.**, 667 S.W.2d 700, 710 (Mo. 1984) (en banc).  Moreover, under Missouri law, "'[t]he test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage.'" **Wunsch**, 92 S.W.3d at 154 (quoting Legg v. Certain Underwriters at Lloyd's of London, 18 S.W.3d 379, 387 (Mo. Ct. App. 1999)) (alteration in original).  Accord **Watters v. Travel Guard Int'l**, 136 S.W.3d 100, 108 (Mo. Ct. App. 2004).  "Generally, . . . a question of reasonableness is a question of fact for the jury rather than a question of law for the court.  But, it can be determined as a matter of law based upon undisputed facts." **Wunsch**, 92 S.W.3d at 153 (alteration added).  See also **Watters**, 136 S.W.3d at 109 ("When there is an open question of law or fact, the insurance company may insist upon a judicial determination of those questions without being penalized.").  "The existence of a litigable issue will, however, not preclude a penalty if the insurer's attitude is shown to be vexatious and recalcitrant." **Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.**, 997 S.W.2d 510, 523 (Mo. Ct. App. 1999).

The relevant facts are generally undisputed.  The parties agree that Hartford acted quickly in investigating and covering Ceramo's property damage loss and that there was approximately a five-month delay from the date of the tornado to the first partial payment on Ceramo's business interruption claim.  The parties further agree that Hartford has paid to date approximately $1.5 million on Ceramo's business interruption claim, and agree that they disagree about how to calculate that claim, each side using a different methodology.  Finally,

and perhaps most significantly, the parties have stipulated that Hartford was not obligated under the instant insurance policy to make any advance payments on any claim that has not been fully adjusted.

In the context of the foregoing agreements and stipulations, Hartford was not obligated to make an advance payment on Ceramo's business interruption claim as long as there was or is a legitimate dispute about the total value of the claim. The parties agree that such a dispute exists. Hartford cannot be liable for a vexatious delay in payment if the parties' dispute about the amount to be paid to Ceramo on its business interruption claim relieved Hartford of any obligation to make early payments on that claim.

Ceramo argues, however, that the parties' dispute about the value of its business interruption claim was itself a vexatious refusal to pay. The facts do not support such an argument. The undisputed evidence is that conflicting reports by experts retained by Ceramo and Hartford have resulted in a legitimate dispute over the extent of Ceramo's damage on its business interruption claim. The only evidence Ceramo presents in support of allegations of a recalcitrant attitude by Hartford is the five-month delay by Hartford in making an advance payment on the claim. As discussed above, however, the insurance policy does not require such an advance payment. See **Watters**, 136 S.W.3d at 109-10 (holding that the insurance company's decision to pay only a portion of the insurer's claim was based upon a novel question of coverage and there was no evidence of a vexatious or recalcitrant attitude of the insurance company and therefore the vexation claim failed); **Hocker Oil Co.**, 997 S.W.2d at 523 (finding that a novel issue of law relating to pollutant cleanup costs precluded a vexatious claim against the insurance company); **Bickerton, Inc. v. American States Ins.**

**Co.**, 898 S.W.2d 595, 602 (Mo. Ct. App. 1995) (finding that a dispute about coverage together with the results of the insurance company's investigation into the loss defeated a vexatious refusal to pay claim); **Mears v. Columbia Mut. Ins. Co.**, 855 S.W.2d 389, 394-95 (Mo. Ct. App. 1993) (holding that insured's complaint that the insurance company's investigation was too thorough did not support a claim for vexatious refusal where the insurance company's investigation was as thorough as would be expected under the circumstance of the loss.) ("To the contrary, an incomplete investigation could very likely be the basis for vexatious and unreasonable refusal to pay."). Cf. **Laster v. State Farm Fire and Cas. Co.**, 693 S.W.2d 195, 197-98 (Mo. Ct. App. 1985) (finding that vexatious refusal claim was established by (a) insurance company's unsupported suspicion of fraud, (b) the insured's inability to gain information from the insurance company, and (c) the insurance company's lack of interest in insured's explanation of loss); **Allen v. State Farm Mut. Automobile Ins. Co.**, 753 S.W.2d 616, 620 (Mo. Ct. App. 1988) (holding that inadequate investigation and denial of claim without stating grounds for denial may be sufficient to create a vexatious claim).

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of Hartford Fire Insurance Company for summary judgment on Count II of the complaint is **GRANTED**. [Doc. 32]

**IT IS FURTHER ORDERED** that the motion of Hartford Fire Insurance Company to strike portions of Kasten's affidavit is **DENIED** as moot.[4] [Doc. 39]

---

[4]The Court did not rely on any of the objected-to portions of the affidavit.

/s/ Thomas C. Mummert, III
							THOMAS C. MUMMERT, III
							UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2006.